### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

RUBBERLITE, INC., a West Virginia corporation,
and JAMES ALLEN MAYO, a natural person,

Plaintiffs,

v.                                          CIVIL  ACTION  NO.  3:08-1106

BAYCHAR HOLDINGS, LLC, a Maine limited
liability company, BAYCHAR INC., a  Maine
corporation, BAYCHAR, a natural person,
BAYCHAR TECHNOLOGIES, INC., a Maine
corporation, and DOES 1 through 100,

Defendants.

### ORDER

Pending are the following motions: (1) Defendants and Counterclaimants Baychar Holdings, LLC, Baychar, Inc., Baychar, and Baychar Technologies, Inc.'s . (collectively referred to as the Baychar Defendants') Motion for Summary Judgment [doc. no. 123]; (2) Plaintiff and Counterclaim Defendant Rubberlite, Inc.'s Rule 56(b) and 56(d)(1) Motion for Partial Summary Judgment/Adjudication [doc. no. 112]; and (3) Plaintiff and Counterclaim Defendant James Mayo's Rule 56(b) and 56(d)(1) Motion for Summary Judgment/Adjudication [doc. no. 111].  On July 26, 2010, the Court held a hearing on the motions.  For the following reasons, the Court **GRANTS** Mr. Mayo's motion, **DENIES** Rubberlite's motion, and **DENIES** the Baychar Defendants' motion with two exceptions as to what may be offered as a factual basis for their claims.

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

As relevant to the summary judgment motions, Mr. Mayo is the CEO and President of Rubberlite.  Rubberlite is a developer and manufacturer of cellular rubber and plastic products and custom-engineered polyurethane foams.  Ms. Baychar invented certain patented intellectual property related to a hi-tech industrial product known as "phase change materials" (PCMs).  Baychar Holdings, LLC, of which Ms. Baychar is the principal, holds and controls these patents.  Generally speaking, if PCMs can be created in a commercially viable manner, they can be applied to various foams and nonwoven materials for widespread applications in a variety of commercial products. If successfully produced, it may provide lucrative business opportunities for developers and manufacturers.  However, the development and commercial production of PCMs involves very technical chemical formulations and manufacturing, which requires a high level of skill and expertise.

Believing a profitable relationship could be forged between the two companies in the PCM market,  Rubberlite and Baychar Holdings, Inc.[1] entered into a License Agreement on January 26, 2007.  In exchange for the patented information and the right to manufacture and sell modified foam material containing PCMs, the License Agreement required Rubberlite to pay Baychar Holdings an annual fee of $225,000, as well as guaranteed minimum royalties of $50,000 per year. The License Agreement also provided that Baychar would provide technical assistance in designing,

---

[1]As will be discussed, the Baychar Defendants assert the that fact the License Agreement was entered into between Baychar Holdings, Inc. rather than Baychar Holdings, LLC is a mere scrivener's error.

manufacturing, marketing, and selling licensed products, and Rubberlite would pay Baychar a consulting fee for such services.

Despite the issues which arose between the parties after the first License Agreement was signed, Mr. Mayo and Ms. Baychar discussed a second License Agreement which would exist through a joint venture structure.  In June and early July of 2007, Mr. Mayo and Baychar signed a letter of intent concerning the joint venture.  Mr. Mayo created a separate company, called Jammer Investments, LLC, to pay joint venture expenses.  Thereafter, on August 3, 2007, Ms. Baychar, as President of Baychar Holdings, and Mr. Mayo, acting as Managing Partner of Mayo-Baychar Joint Venture, signed a second License Agreement, with an annual license fee of $625,000, plus royalties.

The problems which arose soon after the first License Agreement was signed, however, were not resolved, and the business relationships ultimately fell apart.  On January 17, 2008, Rubberlite sent a notice of "Termination of Licensing Arrangement with Rubberlite."  In the notice, Rubberlite asserts it was immediately terminating the licensing arrangement for good cause. On January 23, 2008, counsel for the Baychar Defendants responded by rejecting the notice as being insufficient under the terms of the License Agreement.  Counsel for the Baychar Defendants also stated that, if Rubberlite failed to comply with any essential element of its obligation under the License Agreement, the Baychar Defendants would consider Rubberlite in breach and pursue remedies under the Agreement.

On February 7, 2008, counsel for the Baychar Defendants sent a second letter to counsel for Rubberlite.  This letter was a "Notice of Termination of Licensing Agreement," based upon Rubberlite's alleged failure to perform its obligations under the contract.  The letter gave Rubberlite one week to cure the alleged defects.  Absent such cure, the letter informed Rubberlite that the contract would be terminated and the Baychar Defendants would pursue relief.

At this point, the relationship between the parties was quite acrimonious and, on September 18, 2008, Plaintiffs filed this action against Ms. Baychar, Baychar Holdings, LLC, Baychar, Inc., and Does 1 through 100.  On November 14, 2008, Plaintiffs amended their Complaint to add a third company as a defendant, Baychar Technologies, Inc.  The Baychar Defendants answered the First Amended Complaint and filed a counterclaim against Plaintiffs Rubberlite and Mr. Mayo on January 30, 2009.  On November 6, 2009, Plaintiffs filed a Third Amended Complaint adding another company as a defendant, Solid Water Holdings, LLC (Solid Water).  This Court dismissed Solid Water by Memorandum Opinion and Order entered on May 25, 2010.

In the Third Amended Complaint, Plaintiffs allege five causes of action.  These include: (1) fraudulent misrepresentation and omission; (2) negligent misrepresentation and omission; (3) unjust enrichment in that Rubberlite paid the Baychar Defendants more than $300,000 for a worthless license; (4) breach of contract and covenant of good faith and fair dealing; and (5) a declaratory judgment.  In their counterclaim, the Baychar Defendants allege: (1) a breach of contract by Rubberlite's failure to perform under the License Agreement of January 26, 2007; (2) a breach of the covenant of good faith and fair dealing; (3) a breach of fiduciary duty against Mr.

Mayo with respect to the August 3, 2007 License Agreement; (4) a breach of express and/or implied contract against Mr. Mayo with respect to the August 3, 2007 License Agreement; (5) a breach of duty of good faith and fair dealing against Mr. Mayo with respect to the joint venture; and (6) they seek a declaratory judgment.  It is clear from the pleadings that both parties believe they are the victim of the other party's wrongdoing, and after extensive discovery, both sides argue they are entitled to at least partial summary judgment in their favor.

## II.

## SUMMARY JUDGMENT STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.
### DISCUSSION

### A.
### The Baychar Motion for Summary Judgment

### 1.
### *Fraudulent Misrepresentation and Omission*

The Baychar Defendants argue they are entitled to summary judgment on all of Plaintiffs' claims.  As Plaintiffs rely upon numerous factual assertions in support of their claims, it is necessary for the Court to consider these assertions with respect to each claim to determine whether summary judgment is warranted.  Plaintiffs' first claim of fraudulent misrepresentation and omission primarily focuses on actions taken before the contract was entered.  Specifically, Plaintiffs allege the Baychar Defendants misrepresented a number of material facts which fraudulently induced them into entering into both Licensing Agreements.  These alleged misrepresentations include:

> (a) That the Baychar Defendants had developed specific foam products and applications that were almost "ready for market" when, in fact, they were nowhere near final completion and, in some cases, were nothing but initial, undeveloped, non-specific cryptic notes of generic foam products and formulas that were of no use to Plaintiffs;

> (b) That the Baychar Defendants would provide suitable guidelines and guidance for how to produce the products to be licensed and sold under the Agreement, when, in fact, they did not do so and did not intend to do so;

(c)     That the Baychar Defendants could develop, and assist Rubberlite in developing, a foam line under the Agreement in about "6 to 10 weeks" using Rubberlite's foam formulas or "3 months" using the Baychar Defendants' foam formulas, when such timetables were not possible given the initial, undeveloped and nonspecific state of the Baychar Defendants' products and applications to be used in connection with the Agreement;

(d)     That the Baychar Defendants would provide usable customer and industry contacts that would provide significant sales for Rubberlite when, in fact, Baychar had engaged in and was engaging in bizarre, inappropriate and alienating conduct that had caused and would cause these potential customers and contacts to refuse to do business with the Baychar Defendants and Rubberlite;

(e)     That the Baychar Defendants owned expansive technology rights in modified foam and fabric products, and combinations of products, containing PCMs for use in industrial, automotive, home, office and sporting good applications when, in fact, a U.S. District Court had already invalidated the critical Claim 8 of U.S. Patent No. 6,048,810;

(f)     That "Baychar Holdings, Inc." was a Maine corporation in good standing when, in fact, no such corporation exists or ever existed;

(g)     That the Baychar Defendants intended to work together cooperatively with Rubberlite when, in fact, they intended to act obstreperously and for their own personal gain;

(h)     The Baychar Defendants fraudulently invoiced for technical assistance and expenses; and

> (I)     The Baychar Defendants misrepresented the
> quality, functionality, state of development,
> marketability and ownership of the licensed
> products.

*Third Amended Complaint*, at ¶15(a) - (I).  Plaintiffs also allege that the Baychar Defendants omitted

many material facts related to these same subject matters.  Relying upon these misrepresentations

and omissions, Plaintiffs assert they entered into the contracts and paid the Baychar Defendants

more than $300,000, and they received no value in return.

          In determining whether these allegations are subject to summary judgment, the Court

agrees with Plaintiffs that the factual basis for the vast majority of these issues is heavily disputed,

and the issues are best left for a jury to resolve.  However, there are two contentions by Plaintiffs

that, even if true, the Court finds cannot support their claim.

          First, Plaintiffs point out that the January 26, 2007 License Agreement was with

Baychar Holdings, Inc., and the contract states that Baychar Holdings, Inc. is a Maine corporation.

Plaintiffs assert this representation is inaccurate because Baychar Holdings, Inc. does not exist under

Maine law.  The Baychar Defendants respond by claiming the use of "Inc." rather than "LLC" was

a mere scrivener's error, and it is acknowledged that the actual contracting party is Baychar Holding,

LLC.  In addition, the Court finds it does not appear that either party acted any differently because

the wrong corporate abbreviation was used and, indeed, invoices from Baychar Holdings, LLC were

sent and paid by Rubberlite.   Moreover, Mr. Mayo admitted in his deposition it did not matter to

him what name was on the License Agreement because he was basically dealing with Ms. Baychar

who he believed was managing all the Baychar entities. *Deposition of James Allen Mayo*, at 168

(Nov. 13, 2009).  Given this information, the Court cannot find any actionable fraud based on the fact the contract states Baychar Holdings, Inc. rather than Baychar Holdings, LLC.

Second, the Court finds Plaintiffs' assertion the Baychar Defendants misrepresented the status of litigation over Claim 8 of the U.S. Patent No. 6,048,810 is not actionable.  Although Plaintiffs alleged Claim 8 was critical to the License Agreement, Plaintiffs were informed before entering the January 26, 2007 License Agreement that Claim 8 had been invalidated in November of 2006.  Plaintiffs respond by stating Ms. Baychar told Mr. Mayo that there were defenses to the patent and the problem would be resolved. *Id.* at 134.  However, the Court finds Plaintiffs could not justifiably rely upon Ms. Baychar's representation that she thought she would win on appeal.  Although Ms. Baychar may have believed she had a good case, she could in no way guarantee the outcome.  It simply was not fraud for Ms. Baychar to say she had a basis for appeal and she thought she would get a favorable result.  Plaintiffs knew when they entered the License Agreement that Claim 8 was invalid, and a reasonable person should have known Ms. Baychar had no ability to ensure that decision would be overturned.  Thus, the Court finds Plaintiffs cannot argue Ms. Baychar's representations regarding the potential outcome of an appeal of Claim 8 constitutes fraud.[2]

---

[2]The Court finds Plaintiffs' claim that the Baychar Defendants "fraudulently invoiced for technical assistance and expenses" curious in light of the fact they represent that the "fraudulent and negligent misrepresentation claims properly focus on Defendants' misrepresentations of material facts that were untrue *before* the agreement was reached and that were used to improperly induce[] Rubberlite to enter the Agreement in the first place." *Third Amended Complaint*, at ¶15(h); *Response to Baychar Defendants' Summary Judgment Motion*, at 10 (emphasis original).  It would appear that the invoices were submitted pursuant to the contract, not as inducement to the contract.  However, even if Court considers it as allegation of fraud under the contract, the parties dispute whether the invoices were fraudulent.  In fact, the Baychar Defendants argue that Plaintiffs admit they owe $16,325.00 on the invoices.  Clearly, the disputed invoices represent a question for a jury to which

(continued...)

**2.**

*Negligent Misrepresentation and Omission*

Plaintiffs' second cause of action is for negligent misrepresentations and omissions and is based upon the same facts as their fraud claim.  Although fraud is an exception to the parol evidence rule, the Baychar Defendants argue negligence is not, and it is subject to the integration clause in the contract which prevents the Court from considering extrinsic evidence.  Plaintiffs argue, however, that the parties dispute whether the January 2007 version of the License Agreement is the operative, final version of the contract.  Thus, Plaintiffs assert the controlling integration clause cannot be established.

The Baychar Defendants respond by stating that the terms of the integration clause are not in dispute.  The only dispute is over whether the signed License Agreement is for a term of four or five years.  All the other terms of the License Agreement were identical to Rubberlite's own last proposal which Mr. Mayo had signed.  Thus, the Baychar Defendants argue the integration clause mandates summary judgment on this cause of action.

Plaintiffs insist that even if the Court affirms the existence of the integration clause, parol evidence does not bar their claim for negligent misrepresentation and omission.  Plaintiffs assert that the only difference between negligent and fraudulent misrepresentation is the required scienter, and this fact should not change the application of an integration clause or the parol

---

[2](...continued)
Plaintiffs may raise the legitimacy of the invoices as a defense.  Thus, the Court is unwilling to grant summary judgment on this issue in favor of Plaintiffs.

evidence rule.  Although there is no West Virginia case directly on point, the West Virginia Supreme Court consistently has held "'[a] written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous on its face.' Syl. pt. 3, *Iafolla v. Douglas Pocahontas Coal Corporation*, 162 W. Va. 489, 250 S.E.2d 128 (1978)." Syl. Pt. 1, *Warner v. Haught, Inc.*, 174 W. Va. 722, 329 S.E.2d 88 (1985).  Thus, it would seem that West Virginia courts may allow evidence of mistake or material misrepresentation to be treated similar to allegations of fraud.

In addition, the Fourth Circuit has recognized that other jurisdictions allow such evidence despite integration clauses and parol evidence rules. *See In re Marine Energy Sys. Corp.*, 299 Fed. Appx. 222, 229 n.1 (4th Cir. 2008) (finding that under South Carolina law "'[n]either the parol evidence rule nor a merger clause in a contract prevents one from proceeding on tort theories of negligent misrepresentation and fraud'" (citations omitted)); *Capital Centre, LLC v. Wilkinson*, No. Civ. A. RDB 04-182, 2006 WL 827375, at n. 8 (4th Cir. Mar. 27, 2006) (unpublished) (stating that under Maryland law "a general integration clause will not bar a claim of negligent misrepresentation where that clause does not specifically disclaim liability for certain assurances. The [Maryland] court based its decision on a 'policy of encouraging honesty and candor in contract negotiations' and noted '[t]he implied covenant of good faith and fair dealing would virtually be eliminated if a contracting party could escape liability for negligent conduct simply by inserting a general integration [clause] into the agreement'" (italics deleted and citation omitted)); *Boginis v. Marriott Ownership Resorts, Inc.*, 57 F.3d 1065 (4th Cir. 1995) (unpublished) (recognizing that

under Florida law an exception to the parole or extrinsic evidence rule exists for "actions alleging negligent misrepresentation or, otherwise, fraud in the inducement.  In such cases, the parole evidence rule does not preclude admission of extrinsic evidence'" (citations omitted)).  The Court finds these cases persuasive.  Thus, to the extent the Court will allow evidence on Plaintiffs' fraudulent misrepresentation claim, the Court finds genuine issues of material facts exist and finds summary judgment inappropriate on Plaintiff's negligent misrepresentation and omission claim.[3]

### 3.
### *Unjust Enrichment*

Plaintiffs' third cause of action is for unjust enrichment.  Plaintiffs allege they paid in excess of $300,000 for a worthless license.  They further assert it would be unjust and inequitable to allow the Baychar Defendants to retain these funds for the same basic reasons stated in their other causes of action.[4]  The Baychar Defendants move for summary judgment on this claim on the

---

[3]To be clear, the Court will not allow Plaintiffs to argue the Baychar Defendants negligently misled them and induced them to enter into the contract by virtue of the status of Claim 8 or the scrivener's error regarding the corporate form of Baychar Holdings.

[4]Plaintiffs specifically assert:

> (a) the payments were only made as a direct and proximate result of their acts of fraud and negligence; (b) they have provided nothing of value to Rubberlite to justify their retention of the payments; (c) as corporate alter egos, they arranged for the execution of a contract by the non-existent corporation "Baychar Holdings, Inc."; (d) they failed to provide effective, timely technical assistance required by the Agreement and needed to make the Agreement valuable to Plaintiffs; (e) they fraudulently invoiced for technical assistance and expense; (f) they misrepresented the quality, functionality, stage of development, marketability and ownership of the

(continued...)

grounds that the obligations of each party are governed by the express contract and, therefore, a claim for restitution for unjust enrichment does not exist as a matter of law. *See Marshall v. Elmo Greer & Sons, Inc.,* 193 W. Va. 427, 430 456 S.E.2d 554, 557 (1995) ("An implied contract arises from the principle of equity that one person may not enrich himself unjustly at the expense of another.  However, [a]n implied contract and an express one covering the identical subject-matter cannot exist at the same time.  If the latter exists, the former is precluded." (internal quotation marks and citations omitted)).

Plaintiffs acknowledged that they cannot recover under both contract and unjust enrichment theories, but they state their unjust enrichment claim is merely an alternate theory of recovery.  The Court agrees with Plaintiffs that under Rule 8 of the Federal Rules of Civil Procedure they may plead alternative theories.[5]  As previously discussed, Plaintiffs have alleged fraudulent and

---

[4](...continued)
> licensed products; and (g) they obstructed Rubberlite's business operations and harassed Rubberlite's employees, customers, vendors, and prospective vendors and customers.

*Third Amended Complaint*, at ¶32(a) - (g).

[5]Rule 8(d) provides:

> **(d)    Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**
>
> > **(1)    In General.** Each allegation must be simple, concise, and direct. No technical form is required.
> >
> > **(2)    Alternative Statements of a Claim**
>
> (continued...)

-13-

negligent representations and omissions induced them into signing the contract. As a remedy, they request, in part, recision and restitution. *Third Amended Complaint*, ¶¶ 21, 27, and 39. The West Virginia Supreme Court has stated that:

> [g]enerally speaking, the effect of a rescission is to extinguish the contract and to annihilate it so effectually that in contemplation of law it has never had any existence, even for the purpose of being broken. The effect of a rescission of an agreement is to put the parties back in the same position they were in prior to the making of the contract.

*Bossie v. Boone County Bd. of Educ.*, 211 W. Va. 694, 698, 568 S.E.2d 1, 5 (2002) (quoting 17A Am.Jur.2d Contracts § 600 (1991)); *see also North v. West Virginia Bd. of Regents*, 175 W. Va. 179, 332 S.E.2d 141 (1985) ("Fraud in the procurement of a deed or contract always renders it voidable." (citation omitted)). Thus, if Plaintiffs are successful in rescinding the contract, Plaintiffs may be entitled to unjust enrichment as equitable relief. Accordingly, the Court denies summary judgment in favor of the Baychar Defendants on this claim.

---

[5](...continued)

> **or Defense.** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> **(3)   Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency.

*Fed. R. Civ. P. 8(d)*.

**4**.
*Breach of Contract and*
*Covenant of Good Faith and Fair Dealing*

Plaintiffs' fourth cause of action is for breach of contract and covenant of good faith and fair dealing.  With respect to this claim, Plaintiffs allege a similar factual basis as they alleged with respect to their claims for fraudulent and negligent misrepresentations.  Specifically, Plaintiffs claim the Baychar Defendants:

  (a) failed to provide effective, timely technical assistance required by the Agreement;

  (b) fraudulently invoiced for supposed technical assistance and expenses;

  (c) failed to provide products with the specified quality, functionality, state of development, marketability and ownership;

  (d) were not the exclusive owners of all technology rights to be licensed under the Agreement;

  (e) failed to consult and agree with Rubberlite regarding marketability and publicity before making demands of and alienating prospective clients;

  (f) failed to disclose the voluntary dismissal and/or settlement of the appeal of the U.S. District Court decision invalidating the critical Claim 8 of U.S. Patent No. 6,048,810;

  (g) obstructed Rubberlite's business operations and harassed Ruberlite's employees, customers, vendors, and prospective vendors and customers; and

  (h) failed to cooperate with Rubberlite to develop marketable products incorporating the licensed material.

-15-

*Third Amended Complaint*, at ¶37(a) - (h).  The Baychar Defendants argue that they are entitled to summary judgment on this claim because Rubberlite did not follow the termination clause in the contract by giving three months written notice and an opportunity to cure the alleged breach.  In addition, the Baychar Defendants assert the claim is barred by the doctrine of waiver as Rubberlite expressed a willingness and intent to move forward with the contract even after problems arose.  In fact, Rubberlite went so far to even pay some of the invoices they now assert were fraudulent.

Plaintiffs respond by stating all these claims involve factual issues which are inappropriate to resolve on a motion for summary judgment.  Upon review, the Court agrees with Plaintiffs except as to subparagraph (d) to the extent it includes Claim 8.  As previously stated, it appears that Plaintiffs knew Claim 8 was invalidated prior to entering into the contract.  Therefore, the Court will not allow Plaintiffs to argue the fact the Baychar Defendants did not have ownership rights to this claim violated the contract.

In addition, the Baychar Defendants seek partial summary judgment in their favor on Baychar Holdings, LLC's claim for breach of contract against Rubberlite.  The Baychar Defendants assert Rubberlite breached the contract by failing to pay the annual fee and royalties it owed in a total amount of $1,100,000.  However, whether Rubberlite or the Baychar Defendants breached the contract is clearly in dispute and genuine issues of material facts exists which must be resolved by a jury.  Therefore, the Court denies the Baychar Defendants' motion for partial summary judgment in its favor on this issue.

-16-

**5.**
***Declaratory Judgment***

The Baychar Defendants further argue they are entitled to a declaratory judgment on the following allegations:

- By not paying the annual fees and guaranteed royalties agreed to in the January 2007 license agreement, Rubberlite is in breach, and has not performed all of its obligations under the agreement; . . .

- Rubberlite admits it failed to follow the termination clause of the license agreement; . . .

- Rubberlite clearly did not have good cause to terminate the license agreement; . . .

- Baychar Holdings, LLC is in good standing and defendants did not breach the license agreement; . . .

- Defendants are not liable to Rubberlite or Mayo for any costs of disbursements in connection with this lawsuit.

*Defendants' Memorandum in Support of Motion for Summary Judgment*, at 35-36. As stated above, however, the Court finds there are genuine issues of material fact regarding these matters and, therefore, the Court will not grant summary judgment on these issues.

**6.**
***Punitive Damages***

Finally, the Baychar Defendants make a one-line statement that they are entitled to summary judgment on Plaintiffs' claim for punitive damages. Plaintiffs argue, however, that the Baychar Defendants acted intentionally, maliciously, willfully, and wantonly in disregard of Plaintiffs' rights and, therefore, they are entitled to punitive damages. The Court finds that there

-17-

exists a genuine issue of material fact as to whether Plaintiffs can successfully establish these allegations. If established, punitive damages may be awarded. Therefore, the Court denies summary judgment on this claim.

## IV.
## Rubberlite's Motion for Summary Judgment

In their counterclaim, the Baychar Defendants assert three causes of action against Rubberlite. In direct contrast to the claims brought by Rubberlite, the Baychar Defendants assert Rubberlite was the one that breached the contract (Count I) and the covenant of good faith and fair dealing (Count II). In addition, like Rubberlite, the Baychar Defendants also request declaratory relief (Count VI). Rubberlite moves for partial summary judgment or adjudication under Rule 56(d)(1) on these claims.[6] Specifically, Rubberlite argues that the Baychar Defendants voluntarily terminated the contract when its attorney sent Rubberlite the letter on February 7, 2008, stating that if Rubberlite failed to pay outstanding invoices and provide proof of marketing within one week, the License Agreement would be terminated. As the Baychar Defendants letter effectively

---

[6]Rule 56(d)(1) provides:

> **(d) Case Not Fully Adjudicated on the Motion.**
>
> **(1) Establishing Facts.** If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts--including items of damages or other relief--are not genuinely at issue. The facts so specified must be treated as established in the action.

*Fed. R. Civ. P. 56(d)(1).*

-18-

terminated the License Agreement on February 13, 2008, Plaintiffs argue the Court should rule that they are not entitled to any damages after that time under the terms of the contract.

The Baychar Defendants respond to this argument by pointing out that, before it sent its letter, Mr. Mayo signed and sent a notice that Rubberlite was terminating the contract as of January 17, 2008.  Counsel for the Baychar Defendants rejected the termination notice by letter dated January 23, 2008, claiming it did not comply with paragraph 7.2 of the License Agreement.[7] However, counsel stated if Rubberlite acted as if the contract was terminated, the Baychar Defendants would consider Rubberlite in material breach and pursue all available remedies. Believing that Rubberlite did not thereafter live up to its obligations under the contract, the Baychar Defendants issued its own termination letter dated February 7, 2008, which they claim does conform to the terms of the contact.  As the Baychar Defendants assert Rubberlite was first to breach, they were entitled under West Virginia law to stop their performance and sue for all profits and damages they would have realized had Rubberlite not breached. *Citing, in part,* Syl. Pt. 2, *Yoak v. Marshall Univ. Bd. of Governors*, 223 W. Va. 55, 672 S.E.2d 191 (2008) (stating "[t]he general rule in cases

---

[7]Paragraph 7.2 states:

> 7.2    Each party has the right to terminate this Agreement with three-months prior written notice at any time for good cause in case that the other party breaches an essential obligation under this Agreement and does not cure such breach within a reasonable period of time, however, not longer than ninety (90) days from the non-breaching party's written request to do so.

*License Agreement*, at ¶ 7.2 (Jan. 26, 2007).

of anticipatory breach of contract is that where one party repudiates the contract and refuses longer

to be bound by it, the injured party has an election to . . . treat the repudiation as putting an end to

the contract for all purposes of performance, and sue for the profits he would have realized, if he had

not been prevented from performing" (internal quotation marks and citation omitted)).[8]

In considering the issues raised by the parties, the Court finds whether or not

Rubberlite breached the contract or breached a duty of good faith and fair dealing are genuine issues

of material fact. First, it is very clear that the Baychar Defendants' counterclaims extend beyond

whether Rubberlite's notice of termination was valid. The Baychar Defendants assert that

Rubberlite committed material breaches of the contract by failing to pay licensing fees, royalties,

and invoices, by failing to market licensed products, and by disclosing confidential information to

third parties. Whether these breaches occurred and, if so, whether they constitute material breaches

of the License Agreement are issues within the province of the jury. Second, although the contract

describes how royalties should be paid on licensed products and the purchase of unused raw material

for a period of six months after the contract is terminated, the Court finds there is nothing in the

License Agreement that states the Baychar Defendants cannot pursue damages for other profits it

may have realized if it proves Rubberlite committed a material breach of the contract.[9]   Third, if

---

[8]The West Virginia Supreme Court also stated that the injured party may elect to "treat the contract as rescinded and recover on quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract[.]" *Id.*

[9]The relevant section in the License Agreement is found in paragraph 7.4, which provides, in part:

(continued...)

Plaintiffs are victorious in their arguments the contract must be rescinded, then what equitable damages either party may have also becomes a jury issue.  For these reasons, the Court denies Rubberlite's motion for partial summary judgment or adjudication under Rule 56(d)(1).

## V.
## Mr. Mayo's Motion for Summary Judgment

The Baychar Defendants' counterclaim also asserts four causes of action against Mr. Mayo personally.  Their claims are: (1) breach of fiduciary duty (Count III); (2) breach of express and/or implied contact (Count IV); (3) breach of duty of good faith and fair dealing (Count V); and (4) declaratory relief (Count VI).  Each of these claims arise from the same set of factual circumstances.

After beginning a business relationship through their companies, Mr. Mayo and Ms. Baychar discussed creating a joint venture to develop, market, and sell licensed products based on

---

[9](...continued)

> In the event this Agreement is terminated under Section 7.2 . . ., Licensee shall have the right for a period of time terminating six months after the date of termination to sell any Licensed Products on hand as of the date of termination, all subject to the payment to Licensor of royalties due pursuant to Section 5.1(b) hereof due for all Licensed Products sales made during that six-month period.  If after the six-month period composites or raw materials are still owned by the Licensee, Licensor agrees to purchase all raw materials at purchase cost and composites at full factory costs.  Royalties will not be applicable to this re-purchase provision.

*License Agreement*, at ¶ 7.4, in part.

the Baychar patents.  According to Ms. Baychar, in the months preceding the Letter of Intent,[10] Mr. Mayo made a series of promises and representations.  From her deposition testimony,[11] Ms. Baychar stated that Mr. Mayo agreed to invest his own money and to raise money from other investors to capitalize the joint venture.  On August 3, 2007, a License Agreement between Baychar Holdings and Mayo-Baychar Joint Venture was signed by Mr. Mayo as "Managing Partner" and Ms. Baychar as "Baychar President."  This agreement extended to the joint venture certain rights to use Baychar products in exchange for license fees and royalties.  This License Agreement does not mention any duty on Mr. Mayo's part to fund the joint venture, promote it, or market its products.

The Baychar Defendants' counterclaim asserts that Ms. Baychar was induced to sign the Letter of Intent by Mr. Mayo's alleged promise to personally fund and capitalize the joint venture.  Ms. Baychar then signed and entered into the Licensing Agreement on behalf of Baychar Holdings a short time later for the same reason.  These allegations are central to each of the counts alleging personal liability against Mr. Mayo.  In his motion, Mr. Mayo points to the terms of the Letter of Intent and statements by Ms. Baychar subsequent to executing both the Letter of Intent and the License Agreement as negating her claims.

Upon review, the Court first finds that the unambiguous terms of the Letter of Intent preclude Ms. Baychar's claim that Mr. Mayo undertook a binding obligation to fund the joint

---

[10]The Letter of Intent was signed by Mr. Mayo on June 27, 2007, and accepted by Ms. Baychar on July 9, 2007.

[11]Excerpts of the depositions were provided as exhibits to the motions for summary judgment.

venture.  The Letter of Intent specifically disavows any legal enforcement of negotiations and any binding duty to carry out the formation of a joint venture.  Clearly, no joint venture was created by the Letter of Intent.  Rather, it represents a preliminary stage in the process of formalizing a joint venture.  Next, Ms. Baychar's version of the promises purportedly made by Mr. Mayo place them within the terms of the Letter of Intent.  Any such promises could not be considered legally binding or create any obligation or liability on the part of Mr. Mayo.

Within a month of the Letter of Intent being signed by Ms. Baychar, the License Agreement was executed, but it contains no provisions imposing on Mr. Mayo the duty to fund the joint venture.  At that point, Ms. Baychar was well aware that no joint venture agreement had been executed and neither Mr. Mayo nor Ms. Baychar had secured any funds to capitalize the joint venture.  In fact, Ms. Baychar knew the creation of an actual joint venture was still in the works.  She acknowledged that Mr. Mayo had caused documents to be drafted,[12] which she saw but could not explain in a meaningful way, and that he was still seeking investors to capitalize the joint venture.  Then in September of 2007, Ms. Baychar explicitly acknowledged in a series of e-mails that no joint venture had been finalized.  She made it abundantly clear that she did not want to proceed with the joint venture at that time.  These e-mail exchanges confirm that the Mayo-Baychar joint venture was a work-in-progress and had not reached legal existence.  For these reasons, the Court agrees with Mr. Mayo's motion and grants summary judgment in his favor as to each count of the counterclaim asserting personal liability for the failed joint venture.

---

[12]The documents seem to be corporate formation documents which Mr. Mayo claimed represent the intention of Ms. Baychar and Mr. Mayo to form a corporation to conduct the joint venture.

-23-

# VI.
## CONCLUSION

Accordingly, the Court **DENIES** Defendants and Counterclaimants Baychar Holdings, LLC, Baychar, Inc., Baychar, Baychar Technologies, Inc.'s Motion for Summary Judgment [doc. no. 123] except to the extent the Court will not permit Plaintiff to argue fraudulent and negligent misrepresentation or omission on the basis of the status of Claim 8 or the scrivener's error regarding the corporate form of Baychar Holdings.  The Court also **DENIES** Plaintiff and Counterclaim Defendant Rubberlite, Inc.'s Rule 56(b) and 56(d)(1) Motion for Partial Summary Judgment/Adjudication [doc. no. 112], but **GRANTS** Plaintiff and Counterclaim Defendant James Mayo's Rule 56(b) and 56(d)(1) Motion for Summary Judgment/Adjudication [doc. no. 111].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        August 9, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE